UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| KENNETH D. SCOTT, | ) |
| Plaintiff, | ) |
| v. | ) Case No: 1:07-cv-237 |
| AMEC KAMTECH, INC., ROBERT GORDON MILLWOOD, JOHN DOES 1 AND 2, | ) Chief District Judge Curtis L. Collier |
| Defendants. | ) |

## MEMORANDUM

Before the Court are the motions for summary judgment filed by Defendants AMEC Kamtech, Inc. ("AMEC"),(Court File No. 52) and Robert Gordon Millwood (Court File No. 56). For the following reasons, the Court will **GRANT** these motions.[1]

**I.    FACTS & PROCEDURAL BACKGROUND**

This dispute arises out of injuries Plaintiff Kenneth D. Scott ("Plaintiff"), a Tennessee resident, received while working as a millwright on Defendant AMEC's construction project in Fannin, Texas (Court File No. 59, Ex. 6 at 4). Plaintiff's immediate employer, Valley Mechanical, Inc. ("Valley"), a Tennessee corporation with its principal place of business in Georgia, entered into an agreement with AMEC, the general contractor, to be the subcontractor for demolition work on the project (Court File No. 59, Ex. 2). AMEC also hired a number of operators for the cranes, including Defendant Robert Gordon Millwood ("Millwood") (Court File No. 59, Ex. 1 at 133-34).

---

[1] The Court will **DENY** the remaining motions (Court File Nos. 55, 60, 62, 68) as moot.

Valley's demolition work involved both the inside and the outside of the structure. The work on the inside could be reached by elevator, but for the outside the workers needed to use a "man basket" to ascend (Court File No. 59, Ex. 3 at 36-37). On March 9, 2007, Millwood used a Manitowoc 4100 crane to raise Plaintiff and another Valley employee to the top of one of the structures to undertake demolition work. Later, as Millwood lowered the two men, the basket began a free fall and was stopped abruptly by Millwood prior to hitting the ground, injuring both men, who were immediately taken to the hospital (Court File No. 59, Ex. 9). Plaintiff alleges he suffered injuries to his left ankle, left knee, shoulder, as well as damage to his spine, a pinched sciatic nerve, and mental distress (Court File No. 59, Ex. 3 at 95).

The reason for the free fall is described differently by the witnesses. Millwood's first statement indicated the free fall occurred when "[t]he weight of the load began to overcome the inertia of the power down system." (Court File No. 59, Ex. 9). At his deposition Millwood implied the incident may have been caused when his foot slipped off of the brake pedal (Court File No. 59, Ex. 1 at 181). The accident report indicates "4100 operator put basket in free fall" (Court File No. 59, ex. 13). This is in accord with the report issued the day after the accident by Keith Womack, AMEC's Safety Manager, which indicates Millwood was at fault (Court File No. 59, Ex. 12).

After the accident, Plaintiff was taken to an emergency room in Texas, but Plaintiff received all subsequent medical care in Tennessee (Court File No. 54, Ex. A). At some point prior to the filing of this case, Plaintiff received workers' compensation benefits under the Tennessee workers' compensation scheme. Later, Plaintiff's counsel sent a request for a benefit review conference to the Tennessee Department of Labor (Court File No. 54, Ex. B). According to Plaintiff, he applied to Valley's workers' compensation carrier, who decided to pay benefits under Tennessee law (Court

File No. 59, Ex. 14). AMEC argues Plaintiff's conduct rose to the level of "affirmative action," and he therefore elected coverage under the Tennessee workers' compensation law (Court File No. 64 at 2).

A choice of law issue was previously presented to the Court as a motion for judgment on the pleadings (Court File No. 8). The Court denied that motion because the relevant legal standard required the Court to consider information outside of the pleadings, and Defendants had not carried their burden of proof under the summary judgment standard (Court File No. 40). Defendants then filed these motions for summary judgment on the same issue (Court File Nos. 52, 56).

## II.   STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). That is, the moving party must provide the grounds upon which it seeks summary judgment, but does not need to provide affidavits or other materials to negate the non-moving party's claims. *Celotex*, 477 U.S. at 323. The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, and must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. 988011 Ontario, Ltd.*,

-3-

224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III.    DISCUSSION

This case presents a choice of law question between Tennessee and Texas workers' compensation schemes. The complaint alleges common law tort injuries, but the workers' compensation statutes of Tennessee and Texas determine whether Plaintiff can proceed with his claims. Where a workers' compensation scheme applies, it is generally the exclusive remedy available to the injured employee, thus barring any common law claims against a covered employer or co-employee. Plaintiff alleges that Texas substantive law should apply, whereas AMEC and Millwood argue that Tennessee's workers' compensation statute governs.

#### A.    Workers' Compensation Scheme

Both Tennessee and Texas provide comprehensive workers' compensation statutory schemes. Workers' compensation statutes generally provide a mandatory alternative to the common law tort system.

> Both had suffered under the old systems . . . . Both wanted peace. The master, in exchange for limited liability, was willing to pay on some claims in the future, where in the past there had been no liability at all. The servant was willing, not only to give up trial by jury, but to accept far less than he had often won in court; provided he was sure to get the small sum without having to fight for it.

*W.S. Dickey Mfg. Co. v. Moore*, 347 S.W.2d 493, 495 (Tenn. 1961) (citing *Stertz v. Indus. Ins. Comm'n*, 158 P. 256, 258 (Wash. 1916)). As the Court noted in its previous memorandum and order, both states in this case have an interest in the litigation of this case (Court File No. 40). The question presented here is whether Tennessee and Texas workers' compensation statutes conflict as to Plaintiff's ability to proceed with common law claims against the principal contractor, AMEC, and a fellow employee, Millwood.

### 1. The Tennessee Scheme

The Tennessee workers' compensation statute specifically applies to injuries on work sites in Tennessee. In addition, if "an employee, while working outside the territorial limits of this state, suffers an injury on account of which the employee . . . would have been entitled to the benefits provided by this chapter had such injury occurred within this state, the employee . . . shall be entitled to the benefits provided by this chapter." Tenn. Code Ann. § 50-6-115 (2008). At a minimum there is no question Plaintiff was a Tennessee resident working for a Tennessee corporation, which indicates "there existed a substantial connection between [Tennessee] and the particular employer and employee relationship." Tenn. Code Ann. § 50-6-115(3).[2] Thus, although the injury occurred in Texas, Tennessee's workers' compensation statute would apply to the injury since a substantial connection exists between Tennessee and the relationship between Valley and Plaintiff.

Tennessee law makes a general contractor "liable for worker's compensation in case recovery is unavailable against the employee's immediate employer." *Posey v. Union Carbide Corp.*, 705 F.2d 833, 835 (6th Cir. 1983). This liability is contingent on the subcontractor's failure

---

[2]Plaintiff does not argue that Tennessee workers' compensation did not apply to his employment with Valley.

to procure insurance. *Id*. Under Tennessee law, a general contractor can comply with the statute by requiring that the subcontractor provide worker's compensation insurance for its employees. Tenn. Code Ann. § 50-6-113. Where the subcontractor has provided workers' compensation insurance, the employee is barred from asserting common law claims against the general contractor. Tenn. Code Ann. § 50-6-108.

Once an employee is covered by workers' compensation insurance, the exclusive remedy provision mandates that the employee can only recover worker's compensation benefits and cannot sue under common law. Tenn. Code Ann. § 50-6-108. The Tennessee exclusive remedy provision protects the immediate employer, general contractors, and fellow employees. Under Tennessee law, co-employees acting in the course of their employment are immune from a common law damage action. *Majors v. Moneymaker*, 270 S.W.2d 328, 331 (Tenn. 1954). But "[w]hen an employee is injured by a co-employee who intentionally inflicts injuries upon him, the employee-victim may maintain a common law action against his co-employee." *Taylor v. Linville*, 656 S.W.2d 368, 370 (Tenn. 1983). Thus, if Tennessee law applies to this case, the statute would limit Plaintiff's claims to workers' compensation benefits under the statute and exclude common law liability for both AMEC and Millwood.

### 2. The Texas Scheme

In contrast, if Texas law applies, neither AMEC nor Millwood would be protected from common law claims. It is inarguable the Texas workers' compensation statute applies to a job site in Texas. However, the Texas workers' compensation scheme differs from Tennessee's in that employers may opt not to provide workers' compensation insurance to their employees. Tex. Labor Code Ann. § 406.002. The question of whether an employer is covered under the statute depends

-6-

Case 1:07-cv-00237   Document 74   Filed 09/24/08   Page 6 of 14   PageID #: 578

on whether it has employees, as defined by the statute. Tex. Labor Code Ann. § 401.012. If a covered employer chooses not to provide workers' compensation insurance, the workers' compensation is not the exclusive remedy available to the employee and the employer waives several common law defenses that would otherwise be available in a tort action. Tex. Labor Code Ann. § 406.033(a). Independent contractors and employees of independent contractors are not employees of a general contractor, as defined by the statute, unless the general contractor and the sub-contractor enter into a "written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor." Tex. Labor Code Ann. § 406.123(a); *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 479-80 (Tex. 2005). Thus, general contractors can opt into the statutory scheme or remain open to common law claims.

Under Texas law, Plaintiff is an employee of Valley, which is an independent contractor subcontracting with AMEC. Since AMEC did not execute an agreement with Valley to provide workers' compensation insurance to Valley's employees, AMEC is not an employer of Plaintiff under the statute. Thus, under Texas law, had Plaintiff not already received benefits under Tennessee workers' compensation, Plaintiff would have been able to receive workers' compensation benefits under Texas law from Valley, and sue AMEC and Millwood under common law.

**B.     Choice of Law**

Since Tennessee and Texas law produce different results, the Court must determine which state's law to apply. A federal court sitting in diversity applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). For choice of law in personal injury tort cases, Tennessee utilizes the "most significant relationship" test to determine the

applicable substantive law. *Hataway v. McKinley*, 830 S.W.2d 53, 54 (Tenn. 1992). Under that test, a court applies "the local law of the state where the injury occurred . . . unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties, in which event the local law of the other state will be applied." *Id.* at 57, 59 (citing *Restatement (Second) of Conflict of Laws*, § 146 (1971) ("*Restatement*")).

This case presents the issue of a general contractor who would be immune under the Tennessee exclusive remedy provision, but not under the Texas exclusive remedy provision, where both statutory schemes apply. This is an undecided question in Tennessee law. If the relevant state judiciary has not spoken to an issue, then a federal court sitting in diversity should consider all relevant data and then make the best prediction possible as to what the state's supreme court would do. *Combs v. International Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004).

### 1. *Restatement* § 184 approach

At this stage in the proceedings, the issue is not personal injury tort. Since the application of exclusive remedy provisions governs the outcome on the summary judgment motions, the case is more accurately characterized as a workers' compensation matter. Although the Supreme Court of Tennessee adopted the *Restatement* "most significant relationship test" for personal injury tort claims, it has not addressed the separate section written specifically to address conflicts related to the application of the exclusive remedy provision of workers' compensation statutes, *Restatement* § 184.

"Recovery for tort . . . will not be permitted in any state if the defendant is declared immune . . . by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which the plaintiff (a) has obtained an award

-8-

for the injury." *Restatement (Second) of Conflict of Laws* § 184. Or, as stated by a leading treatise: "It is generally held that, if a damage suit is brought in the forum state by the employee against the employer or statutory employer, the forum state will enforce the bar created by the exclusive remedy statute of a state that is liable for workers' compensation as the state of employment relation, contract, or injury." 3 *Larson's Workers' Compensation*, § 144.01[2] (desk ed.) (*citing Osborn v. Kinnington*, 787 S.W.2d 417 (Tex. Ct. App. 1990)). Under *Osborn*, Texas courts would apply Tennessee's exclusive remedy provision in this case. "As to third-party actions, if compensation has been paid in a foreign state and suit is brought against a third party in the state of injury, the substantive rights of the employee, the subrogated insurance company and the employer are ordinarily held governed by the law of the foreign state, although there is contra authority." *Osborn*, 787 S.W.2d at 419. Thus, to the extent Texas has an interest in the application of its workers' compensation scheme, it has disclaimed that interest.

The leading case in this area of the law remains *Wilson v. Faull*, 141 A.2d 768 (N.J. 1958). In *Wilson*, a New Jersey general contractor hired a New Jersey subcontractor for a job in Pennsylvania. *Id*. at 771-72. An employee received an award of benefits from New Jersey, and New Jersey law treated a general contractor as a third party subject to a common law tort action by the employees of a subcontractor. *Id*. at 772-73. The general contractor argued the Pennsylvania workers' compensation act would prohibit recovery and its exclusive remedy provision should be applied. *Id*. The court held "where the injured employee seeks to maintain a common law tort action against his employer in one of two or more states having a legitimate interest in the work-injury, the forum has almost invariably applied the law of the state in which the employer has provided compensation insurance and whose law granted such employer immunity from common

law negligence actions by the employee, and dismissed the suit." *Id*. at 774.

### 2. Tennessee Court of Appeals approach

The question remains whether a Tennessee court would join in this majority approach. The only case in Tennessee to deal with the exclusive remedy provision of the workers' compensation act in the context of an injury in a foreign state is *Hudnall v. S&W Constr. Co. of Tenn., Inc.*, 451 S.W.2d 858 (Tenn. Ct. App. 1969). In *Hudnall*, a Tennessee general contractor hired a Tennessee subcontractor to construct silos at Natchez, Mississippi. *Id*. at 859. The subcontractor employed the plaintiff, a Tennessee resident, as a structural design engineer. *Id*. at 860. The plaintiff's claim was "based upon the alleged negligence of the principal contractor in the construction of a scaffold which collapsed while plaintiff was using it in the performance of his work." *Id*. at 859. The plaintiff insisted the Mississippi act applied while the defendants insisted the Tennessee act applied. The court held the "common law action cannot be sustained in the courts of Tennessee because under the facts of this lawsuit the Workmen's Compensation Act of Tennessee is applicable." *Id*. at 862. And "a court will not enforce a right of action against the employer based on tort under the law of the place where the injury occurred when the compensation law of the forum is applicable and provides an exclusive remedy against the employer." *Id*. (citing 99 C.J.S. *Workmen's Compensation* § 23e). As with the *Restatement* § 184 approach, the Tennessee court applied the law of the state where the plaintiff received workers' compensation benefits.

*Hudnall* is particularly relevant because the Tennessee Court of Appeals determined that Tennessee's exclusive remedy provision should apply where, as in the current case, the plaintiff had already received benefits under Tennessee workers' compensation scheme and the general contractor had complied with the law of Tennessee, but not the law of the place of the injury. Although

*Hudnall* was decided while Tennessee still applied the law of the place of the wrong in tort actions, the court of appeals refused to enforce the law of the other state because the result was "repugnant to the law and public policy of the State of Tennessee." *Hudnall*, 451 S.W.2d at 862. The minor differences between *Hudnall* and the present case do not alter the conclusion that Tennessee public policy favors enforcing the exclusive remedy provision where Tennessee has provided workers' compensation to the employee.[3]

### 3. Choice of Law Analysis

Tennessee's adoption of the *Restatement* "most significant relationship" test and the *Hudnall* decision compel the Court to conclude the Supreme Court of Tennessee would follow the *Restatement* approach stated in § 184. While § 184 does not involve a significant relationship analysis, the rule serves the choice of law principles outlined in *Restatement* § 6. Specifically, § 6 directs the court to consider:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability, and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

*Hataway*, 830 S.W.2d at 59.

Applying the law of the state that has awarded workers' compensation benefits addresses these factors by giving comity to the state that has already exercised jurisdiction over the matter.

---

[3]Although Plaintiff argues that *Smith v. Rockwell*, 581 S.W.2d 954 (Tenn. Ct. App. 1979), should apply to this case, there the court was interpreting and applying the Tennessee workers' compensation extraterritoriality provision to determine whether the statute covered the dispute, not whether Tennessee choice of law mandated the application of forum law.

-11-

It also assures certainty, uniformity, and predictability by applying the entire statutory scheme to an injury, instead of allowing the plaintiff to receive benefits under one state's statute and sue under a different state's law. In this case, it prevents the inconsistency of applying Texas law in a case where Texas courts would respect Tennessee's exclusive remedy provision. *Osborn,* 787 S.W.2d at 419. Section 184 also precludes forum shopping and advances the public policy behind workers' compensation by holding plaintiffs to a state's entire statutory scheme and not allowing plaintiffs to accept the benefits of workers' compensation while also attempting to obtain a higher damages award through a common law negligence action.

In addition, the rule protects justified expectations by holding the parties to the workers' compensation scheme that already applies to the injury. It does not extend the extraterritorial coverage of any workers' compensation statute that would not otherwise apply. As the *Restatement* commentary notes:

> It is thought unfair that a person who is required to provide insurance against a risk under the workmen's compensation statute of one state which gives him immunity from liability for tort or wrongful death should not enjoy that immunity in a suit brought in other states. Also to deny a person the immunity granted him by a workmen's compensation statue of a given state would frustrate the efforts of that state to restrict the cost of industrial accidents and to afford a fair basis for predicting what these costs will be.

*Restatement (Second) of Conflict of Laws* § 184 cmt. b. Tennessee law required the subcontractor to provide workers' compensation insurance, and it made the general contractor derivatively liable for that insurance. For this Court to deny the general contractor the benefit of Tennessee's exclusive remedy provision after it has complied with the statute would frustrate the public policy of the Tennessee workers' compensation law.

Since the § 184 rule addresses the factors listed in *Hataway*, the Court determines that the

Supreme Court of Tennessee would adopt the *Restatement* approach to exclusive remedy provisions in workers' compensation disputes.

### C. Application of Tennessee's Workers' Compensation Scheme

As discussed previously, Tennessee's workers' compensation statute applies to this dispute through the extraterritoriality provision. Tenn. Code Ann. § 50-6-115. Under Tennessee law, AMEC is a statutory employer who is only liable for worker's compensation insurance if the subcontractor fails to provide it for its employees. Tenn. Code Ann. § 50-6-113. Since Valley provided workers' compensation insurance and Plaintiff is receiving benefits under Tennessee's workers' compensation scheme, AMEC is protected by the exclusive remedy provision. Tenn. Code Ann. § 50-6-108. Therefore, the Court will **GRANT** AMEC's motion for summary judgment (Court File No. 52).

Millwood moves for summary judgment on the grounds he "was working within the course and scope of his employment at the time of the accident." (Court File No. 57 at 2). As discussed above, Tennessee's workers' compensation exclusive remedy provision covers fellow employees who were working in the course of employment. *Majors*, 270 S.W.2d at 331. Under Fed. R. Civ. P. 56, Plaintiff now has the burden to put forward enough evidence to show a reasonable juror could find Millwood was working outside the scope of his employment or that Millwood acted intentionally rather than negligently. Plaintiff does reference a previous incident where Millwood had intentionally caused a basket to fall with Plaintiff inside (Court File No. 59, Ex. 11 at 2), but provides no argument or evidence showing Millwood caused the relevant accident by intentionally causing the basket to fall. Therefore, the Court will **GRANT** Millwood's motion for summary judgment (Court File No. 56).

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** the Defendants' motions for summary judgment (Court File Nos. 52, 56), and the Court will **DENY** AMEC's and Plaintiff's motions related to summary judgment as moot (Court File Nos. 55, 60, 62, 68).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**